PEOPLE v KYSER

Docket No. 47265. Submitted December 10, 1980, at Detroit.—Decided
      May 6, 1981.

Rudean Kyser was convicted by a jury in Monroe Circuit Court of
      larceny from the person and was sentenced to 6-1/2 to 10 years
      imprisonment, James J. Kelley, J. She appeals, contending that
      she was denied effective assistance of counsel because her
      attorney failed to bring a pretrial motion to suppress a lineup
      indentification on the ground that it was the product of an
      illegal arrest. *Held:*

      1. The arrest was not illegal due to a lack of probable cause
      because of a discrepancy between the description of the assail-
      ants given by the victim and defendant's physical size. The
      description was not, under the particular circumstances of this
      case, so insubstantial as to render the arrest illegal.

      2. Defense counsel's failure to raise the issue of defendant's
      supposedly illegal arrest might have been trial strategy. As
      such, it will not be second-guessed by the Court of Appeals.
      Defense counsel's action was supportable in view of the fact
      that there was no illegality in the arrest.

      Affirmed.

1. ARREST — PROBABLE CAUSE.

      Probable cause for an arrest has been held to be any facts which
      would induce a fair-minded person of average intelligence to
      believe that the suspect has committed a felony, and that the
      facts upon which such belief is based were present at the
      moment of arrest.

2. ARREST — PROBABLE CAUSE — APPEAL — STATUTES.

      A court, in reviewing a claim that a police officer lacked probable
      cause to arrest without a warrant, must determine whether

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 5 Am Jur 2d, Arrest § 44 *et seq.*
   What constitutes probable cause for arrest-supreme court cases. 28
      L Ed 2d 978.
[3] 5 Am Jur 2d, Appeal and Error §§ 624–627.
[4] 41 Am Jur 2d, Indictments and Informations § 286.

facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence to believe that the suspected person had committed a felony; each case must be analyzed in light of the particular facts confronting the arresting officer (MCL 764.15; MSA 28.874).

3. APPEAL — TRIAL — TRIAL STRATEGY.
    The Court of Appeals will not try to second-guess a defense attorney's trial strategy in a criminal case.

4. CRIMINAL LAW — ARREST — PRETRIAL MOTION TO CHALLENGE ARREST — TRIAL TACTICS.
    A decision to make a pretrial motion to challenge an arrest is generally a matter of trial tactics.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *James G. Petrangelo,* Assistant Prosecuting Attorney, for the people.

*Kim Robert Fawcett,* Assistant State Appellate Defender, for defendant on appeal.

Before: V. J. BRENNAN, P.J., and N. J. KAUFMAN and M. J. KELLY, JJ.

PER CURIAM. Defendant was convicted by a jury in Monroe County Circuit Court of larceny from the person, MCL 750.357; MSA 28.589. Defendant was sentenced to 6-1/2 to 10 years imprisonment, with credit for 178 days already served. It is from this conviction and sentence that defendant now appeals as of right, pursuant to GCR 1963, 806.1.

On appeal, defendant raises four issues, only one of which we deem merits our consideration. Defendant claims that she was denied effective assistance of counsel where defense counsel failed to bring a pretrial motion to suppress a lineup identification because it was the product of an illegal arrest of defendant. It is the issue of the legality of

defendant's arrest to which we shall address our-selves.

The statutory authority for an officer to arrest without a warrant is set forth in MCL 764.15; MSA 28.874, which provides in pertinent part:

"A peace officer may, without a warrant, arrest a person * * *

"(d) when the peace officer has reasonable cause to believe that a felony has been committed and reasonable cause to believe that the person has committed it."

In *People v Summers*, 407 Mich 432; 286 NW2d 226 (1979), the Court noted that probable cause for an arrest has been defined as any facts which would induce a fair-minded person of average intelligence to believe that the suspect has committed a felony, and that such facts upon which such belief is based must be present at the moment of arrest. Further, in reviewing a claim that a police officer lacked probable cause to arrest, this Court must determine whether facts available to the officer at the moment of arrest would justify a fair-minded person in believing that the suspect had committed a felony.

In the instant case, at the time of defendant's arrest, the police had the following information: (1) Mrs. Janet Compeau's wallet and credit cards had been taken from her by two black women after she had pulled into a rest area on I-75, (2) Mrs. Compeau described the women as wearing dark shoulder length wigs and one as wearing a beige coat with a fur collar, (3) each of the two perpetrators was approximately 5′ 5″ tall and weighed about 120 pounds.

Defendant contends that because she was only 5′ 1″ tall and weighed only 110 pounds, Mrs. Compeau's description of her was erroneous and could

not have possibly provided the police with the probable cause necessary for her arrest. Under the peculiar circumstances of the instant case, we cannot agree.

Mrs. Compeau was robbed by two women at a rest stop near Monroe, Michigan. She was returning home from work and had pulled into the stop-area because she was feeling ill due to an attack of hypoglycemia, a condition from which she suffered. She testified that she passed out for a brief period and, upon regaining consciousness, she saw two women (whom she later positively identified at a postarrest lineup as defendant and Evelyn Michaels, defendant's sister) at the front of her car. Mrs. Compeau stated that she honked her horn and motioned to defendant and Mrs. Michaels to come to her aid. Both women approached Mrs. Compeau's window on the driver's side and questioned her about her situation. She testified that she told them she was ill and needed some help. Mrs. Compeau stated that when the women approached her car she rolled down the window and was able to see their faces very clearly, the car having been parked in a well-lighted area near the rest rooms.

Mrs. Compeau testified that about one-half hour after this conversation, the women returned to her car. Defendant reached into the window on the driver's side, unlocked the back door on that side, entered the car, and unlocked the front passenger side door, whereupon the other woman climbed into the front seat. After both women were in the car with Mrs. Compeau, Mrs. Michaels removed Mrs. Compeau's wallet from her purse. Defendant and Mrs. Michaels then exited from the car.

The first person Mrs. Compeau spoke to after the alleged larceny was the ambulance driver.

Both the driver and the ambulance attendant testified that Mrs. Compeau was coherent and alert, although she was weak.

Mrs. Compeau was taken to a hospital where she was visited by Detective Cole. In attempting to describe her assailants, Mrs. Compeau gave their approximate sizes, but stressed that she was uncertain of sizes, but could certainly identify their faces. Ultimately, the description given the police was of two black females of average height and weight, wearing shoulder length wigs. Later that night, the police set up a surveillance unit at the rest stop in question, and on the following night they observed two women answering the descriptions provided by complainant. These women were subsequently placed under arrest.

Defendant argues that the height discrepancy between herself and the person described was sufficient to eliminate any probable cause for her arrest. Given the fact that complainant's attention was drawn to defendant's face and hair style rather than her height, we do not believe that the description was so faulty as to render the arrest illegal.

We note that the incident in question took place in January. In midwinter in Monroe, Michigan, it seems more than coincidental that two women matching the descriptions supplied by the complainant should appear at the rest stop on two consecutive nights. It appears from the record that there were not many women at the stop on the nights in question and that defendant and her sister were probably the only women with the distinctive wigs described by the witness. Under the particular circumstances of the instant case, we hold that the description was not so insubstantial as to render defendant's arrest illegal.

Our resolution of this issue makes it unnecessary to consider the other issues raised by defendant. Defendant's counsel's failure to raise the issue of her supposedly illegal arrest might have been trial strategy, which will not be second guessed by this Court on appeal. *People v Penn,* 70 Mich App 638; 247 NW2d 575 (1976). A decision to make a pretrial motion to challenge an arrest is generally a matter of trial tactics. *People v Stevenson,* 60 Mich App 614; 231 NW2d 476 (1975). Here, especially in view of the fact that there was no illegality in the arrest, defense counsel's action is supportable.

Defendant's attorney mounted a zealous defense and his representation did not fall short of the standard for effective assistance of counsel enunciated in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976).

Although we can appreciate defendant's dissatisfaction with her sentence, it complies with the minimum and maximum penalties as well as with the parameters of the indeterminate sentencing act as interpreted in *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972), and will not be disturbed by this Court on appeal.

Affirmed.