PEOPLE v PATE

Docket No. 52116. Submitted April 7, 1981, at Lansing.—Decided
August 19, 1981.

Keith L. Pate was convicted of assault with intent to commit
murder and armed robbery, Washtenaw Circuit Court, William
F. Ager, Jr., J. He appeals by leave granted, alleging that
questions posed by the prosecution relative to his failure to call
witnesses listed on his notice to assert an insanity defense
deprived him of a fair trial. *Held:*

The prosecutor's questions, while improper, constituted only
harmless error. One of the witnesses ultimately testified for the
prosecution, and the questions regarding the other witness
were withdrawn, and the jury was given a curative instruction.
The objectionable questions were few in number, and no fur-
ther comment was made by the prosecutor during his closing or
rebuttal arguments.

Affirmed.

CYNAR, P.J., concurred. He would note that under the cir-
cumstances of the case the trial court, in its discretion, could
have allowed the prosecutor to cross-examine the defendant
relative to his failure to call an indorsed, insanity defense
witness. He also would affirm.

OPINION OF THE COURT

1. CRIMINAL LAW — NOTICE OF ALIBI OR INSANITY DEFENSE — STAT-
UTES.

A defendant who fails to give notice of his intention to call a
witness in support of his defense of alibi or insanity may be
precluded from calling the witness (MCL 768.21; MSA 28.1044).

2. CRIMINAL LAW — WITNESSES — ALIBI DEFENSE — INSANITY DE-
FENSE — PROSECUTORIAL COMMENT.

A prosecutor may question a defendant relative to his filing of a

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 70, 193.
Validity and construction of statute requiring defendant in criminal
case to disclose matter as to alibi defense. 45 ALR3d 958.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 101, 193.
29 Am Jur 2d, Evidence § 180.

notice of alibi only after the defendant actually has put forth an alibi defense; but a prosecutor is not permitted to comment upon or to question the defendant relative to his failure to call a witness listed on his notice of intention to assert an insanity defense.

CONCURRENCE BY CYNAR, P.J.

3. CRIMINAL LAW — WITNESSES — INSANITY DEFENSE — PROSECUTORIAL COMMENT.

*A trial court, in its discretion, may permit a prosecutor to comment upon a defendant's failure to call an indorsed, insanity defense witness where warranted by the circumstances of the case.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*W. B. Raymer, P.C.,* for defendant.

Before: CYNAR, P.J., and BRONSON and D. F. WALSH, JJ.

PER CURIAM. Following a jury trial in the Washtenaw County Circuit Court, defendant was convicted of assault with intent to commit murder and armed robbery contrary to MCL 750.83; MSA 28.278 and MCL 750.529; MSA 28.797, respectively. Defendant was sentenced to life imprisonment on both counts. He now appeals by leave granted.

That defendant committed the offenses for which he was convicted was not seriously at issue during trial. Instead, the real issue for the jury's determination was whether defendant was legally responsible at the time of the incident.

Katherine Model, the 62-year-old victim, was awakened on July 22, 1974, at approximately 12:45

a.m. by the sound of breaking glass. She saw a man, whom she later positively identified as defendant, standing in front of her and asked him what he wanted.

Defendant replied that he had come for her money and told her that he was carrying a knife. Defendant then stabbed her two or three times in her left shoulder. The victim subsequently told him that the money was in a vanity drawer. At this point, defendant turned on a light and thus enabled the complainant to identify him. After she told defendant that she knew him, he turned off the light and stabbed her repeatedly. Defendant placed his forefingers in the victim's vagina and told her she would be dead before he left the house. He then placed a pillow over her head, and she passed out.

The sole issue raised on appeal is whether the prosecutor deprived defendant of a fair trial by a series of questions implying that defendant was "hiding doctors" who would have testified that he was sane. Defense counsel objected to these questions which concerned Drs. Westerberg and Carron, and the following colloquy ensued outside the presence of the jury:

"*The Court:* You may proceed.

"*Mr. Thompson:* Your Honor, briefly stated, the basis of my objection is as follows. Dr. Carron, it is correct, that it is a matter of public record, that Dr. Carron's name was listed on a piece of paper that I filed as a possible witness. But one thing Mr. Freedman apparently conveniently forgot is that on no certain terms had Dr. Carron ever spoken to the defendant or did not see the defendant. I think the question is prejudicial, and I ask that the prosecutor be reprimanded for it.

"*Mr. Freedman:* I asked the question, and all he had to do was say no. Secondly, all I asked him was if he

was aware that Dr. Carron was listed. This is a matter of public record and as the defendant in this case, I am asking him if he's aware of the fact that Dr. Carron was listed as one of the possible witnesses that may be called in response.

"*The Court:* Why would this be material, counsel? He says he doesn't remember if he knows Dr. Carron.

"*Mr. Freedman:* I would say why it's important is simply this. As I have stated on the record, when this trial started before the jury was selected, I had been given three pieces of paper with names of doctors who might possibly be called for the insanity defense in this case. It is my belief, your Honor, and I would say this on the record outside the hearing of the jury, that the defendant is shopping around for a doctor. He's shopping around for a doctor who is going to testify to what he wants to hear. I think they finally found one, and he should know because he is the defendant that there have been many other doctors that they have listed, that they have listed on the top that these doctors may testify, and I want the jury to know throughout this trial—

"*The Court:* The court will sympathize with you, but why is it material? Counsel said that Dr. Carron never examined the defendant. Why is it material?

"*Mr. Freedman:* It's material because I think the defense is hiding doctors. The reason Dr. Carron did not examine this individual is Dr. Carron said he would be glad to examine the individual if—

"*The Court:* That's not before the court.

"*Mr. Freedman:* In the issue of insanity, we have been given information that they may testify and now we are being told they are not going to testify, and I think it's very relevant the jury should know this.

"*The Court:* What does it have to do with his insanity or lack of insanity? We are not testing the sanity of his attorney. We are testing the insanity of him. His counsel can list anybody he wants to. The law requires that he list anybody that he might possibly call. It doesn't say who examined him or why is it material in this case as to what his attorney does?

"*Mr. Freedman:* I would assume that what his attor-

ney does is an extension of the defendant, and I would assume the defendant knows.

"*The Court:* Do you have any law on that? There is nothing before the court—

"*Mr. Freedman:* Well, the defense attorney is the legal spokesman for the defendant, and he, the defendant, is not an attorney, so he hires an attorney to do what you feel is best for him, and I have to assume that the defendant knows that these people have been listed.

"*The Court:* Why do you assume that? I'm sorry. Maybe I have lost you, Mr. Freedman. Is there some law on this?

"*Mr. Freedman:* Well, what you are saying is that anything that the defense attorney does that the defendant is not auspicious of—

"*The Court:* No, the court isn't saying that. The court is asking you. I am not saying anything. I am asking you a question, is there any law that says that? Listen, counsel!

"*Mr. Freedman:* Your Honor, I will withdraw the question."

When the jury returned to the courtroom, the trial judge gave a curative instruction telling the jury to disregard anything said about a list of witnesses.

A notice of alibi and a notice of insanity are in many ways similar.[1] The purposes behind the re-

---

[1] At the time of trial, notice of alibi and insanity were covered by the same statute which provided in pertinent part:

"Whenever a defendant in a criminal case not cognizable by a justice of the peace shall propose to offer in his defense testimony to establish an alibi on behalf of the defendant, or of the insanity of such defendant either at the time of the alleged offense or at the time of trial, such defendant shall at the time of arraignment or within 10 days thereafter but not less than four days before the trial of such cause file and serve upon the prosecuting attorney in such cause a notice in writing of his intention to claim such defense and the names of witnesses to be called in behalf of such defendant to establish such defense known to him at that time. Names of other witnesses may be filed and served before or during the trial by leave of the court and upon such conditions as the court shall determine." MCL 768.20; MSA 28.1043, subsequently amended 1974 PA 63, 1975 PA 180.

quirement mandating that a defendant disclose his
intention to claim a defense of alibi or insanity are
the protection of the public and to avoid unfair
surprise to the prosecution at trial. See *People v
Shannon,* 88 Mich App 138, 144; 276 NW2d 546
(1979). A defendant who fails to list on his notice a
witness supporting his alibi or insanity defense, as
the case may be, may be precluded from calling
the unlisted witness. MCL 768.21; MSA 28.1044. In
light of the similarities between the notice of alibi
and insanity, it would not be illogical to resolve
questions concerning the propriety of inquiring
about missing insanity witnesses by reference to
how the courts have handled the similar problem
of missing alibi witnesses. *Shannon, supra,* 145,
notes several cases holding that a prosecutor may
permissibly comment on a defendant's failure to
produce a corroborating witness where an alibi has
been presented. Furthermore, a prosecutor may
ask questions about the filing of the notice of alibi
after the defendant actually has put forth an alibi
defense. *People v Hunter,* 95 Mich App 734, 738-
739; 291 NW2d 186 (1980).

Despite the similarities between notices of alibi
and insanity, there are also significant differences
between the natures of these defenses which lead
us to conclude that a prosecutor may not permissi-
bly comment upon or question a defendant about
his failure to call a witness listed on the notice of
insanity. Unlike the situation with an alibi wit-
ness, it will often be difficult for a defendant to
know whether a particular psychiatrist listed on
the notice of insanity will testify on his behalf. An
alibi is a defense turning on the presentation of
specific verifiable facts. A defendant usually will
have no difficulty in ascertaining who can and who
cannot corroborate his alibi. The insanity defense

on the other hand requires presentation of witnesses testifying on the matter of a defendant's subjective state of mind. A defendant's state of mind is not specifically verifiable by reference to external facts, or, at least, the externalities are open to individual interpretations in a way that the facts of an alibi are not. We do not believe that a prosecutor should be allowed to cast aspersions on a defendant's insanity defense simply by pointing out that a particular psychiatrist who was listed as a potential witness was not called.[2] To do so would encourage defense attorneys to seek out psychiatric witnesses who have come to be associated with the defense in such proceedings and not risk having their clients examined by persons who have either not testified in previous cases or who have testified on different occasions for the prosecution and defense. In our opinion, this would detrimentally affect the truth-finding function of a trial by virtually eliminating from the process those expert witnesses most likely to be impartial. All too often trials in which insanity is an issue are swearing contests between opposing psychiatric witnesses who are permanently aligned with either the prosecution or the defense. This problem would only be exacerbated by allowing com-

---

[2] By 1975 PA 180, effective August 6, 1975, some eight months after the completion of trial in this cause, notices of alibi and insanity became covered by separate statutes. MCL 768.20; MSA 28.1043 now covers only the alibi notice. It is not clear whether a defendant claiming an insanity defense any longer must name his witnesses in advance. While MCL 768.20a(3); MSA 28.1043(1)(3) requires defendant to notify the prosecution at least five days in advance of his intention to secure psychiatric examination independent of the Center for Forensic Psychiatry, nothing in MCL 768.20a; MSA 28.1043(1) actually requires that any witnesses named be disclosed. MCL 768.21; MSA 28.1044, however, does state that a witness to be called to establish the insanity defense must be disclosed. The significance of this is uncertain given that MCL 768.20; MSA 28.1043, itself, clearly requires divulgence of the names of the alibi witnesses. We do not need to resolve this problem in this case.

ment on the failure to produce a particular psychiatrist at trial.

Another difference between the two defenses is that while it is almost always advantageous to call every witness who can testify that defendant was not at the scene of the crime when it was committed, the same is not true of psychiatric witnesses. Where several experts might be prevailed upon to testify for a defendant, differences in the individual mental health professional's expertise, experience, approach, and views toward mental illness may make it inadvisable to call all. There may be differences in viewpoint between the psychiatrists which defense counsel may not wish to come before the jury, fearing that these differences might lead the jury to reject the insanity defense because defendant's experts cannot agree on the exact nature of the illness, even though agreement exists on the issue of defendant's legal insanity. Some experts are more open to attack on the basis of credibility than others. The defense may wish to avoid presenting a witness likely to be discredited in fear that it will jeopardize the whole defense. While there will be concerns about particular alibi witnesses' credibility, the more subjective nature of the insanity defense intensifies this problem.

To summarize, we do not believe that the defendant's failure to call a particular psychiatrist listed on his notice of insanity is relevant to the issue of whether he is really insane. The failure to call a listed witness does not make it less probable that defendant was insane when the crime was committed. See MRE 401. Moreover, assuming, *arguendo,* that the failure to call such a witness can be deemed relevant, we believe that, given the nature of the insanity defense, MRE 403 would require exclusion of this evidence as unduly prejudicial.

We particularly note the impropriety in this case of the questions put to defendant concerning Dr. Carron. The prosecutor knew that Carron had not examined defendant. As such, the failure to call him in no way can be deemed relevant to the issue of sanity.

Despite the foregoing, we are convinced that the error was harmless for a number of reasons. First, Dr. Martha Westerberg actually ultimately did testify for the prosecution.[3] Second, the questions concerning Dr. Carron's absence were withdrawn, and the jury was specifically told to disregard them. Third, the number of objectionable questions were few. Finally, the prosecutor did not comment in his closing or rebuttal arguments on defendant's failure to call the witnesses in question.

Affirmed.

CYNAR, P.J. *(concurring)*. While concurring to affirm, I am compelled to write separately. Far too many words are written on whether the prosecutor deprived defendant of a fair trial by questioning defendant about witnesses that were not called but who had been endorsed concerning the defense of insanity.

During trial, defendant took the stand in his own behalf and on cross-examination was asked if he recalled talking to "Dr. Westberg *[sic]*". Defendant did not recall doing so. Defendant was also asked if he knew that "Dr. Westberg" was endorsed as a possible witness on the defense of insanity. Before defendant could answer, defense

---

[3] Since Westerberg was to be called as a witness anyway, the sole purpose in asking the questions about her was to prejudice defendant's insanity defense. It is obviously immaterial whether the defense or prosecution first sought a particular psychiatrist's testimony. Instead, what are material are the specific findings of the mental health expert concerning the defendant's state of mind.

counsel objected on the grounds of relevancy. The prosecutor continued to question the defendant about possible insanity defense witnesses. The defendant indicated that he did not recall anything about the names but stated that he had seen many doctors in the past six months, so that it was difficult for him to recall any of their names. The prosecutor continued and questioned the defendant about Dr. Carron, "a listed witness who might possibly be called in the defense you have just raised". Defense counsel again objected and the jury was excused.

This writer observes that a Dr. Westerberg, but not a Dr. Westberg, was endorsed.

Arguments were heard in the absence of the jury, and the court determined that evidence of possible insanity defense witnesses who were endorsed but not called was immaterial. The court instructed the jury to disregard anything said about a list of witnesses.

Had the trial court ruled otherwise, it would not have been an abuse of discretion based on the record before us. The purpose of adversary advocacy at times is defeated when cross-examination as proposed here unrealistically is confined or restricted to so narrow a limitation as to reduce the effectiveness of the truth-seeking process.