PEOPLE v GIUCHICI

Docket No. 55298. Submitted May 12, 1982, at Lansing.—Decided July 20, 1982.

Michael A. Guichici was convicted of first-degree murder upon a jury verdict of guilty but mentally ill, Lapeer Circuit Court, Norman A. Baguley, J. Defendant appealed, alleging several errors. *Held:*

1. The trial court did not err in refusing to suppress a confession made by the defendant while he was in custody and was not represented by counsel. The police acted properly in attempting to clarify the defendant's initially ambiguous answer to the question of whether he wanted counsel, with no attempt to coerce defendant into waiving his rights. The defendant made a knowing, voluntary, and intelligent waiver.

2. Defendant's confession was not obtained as a result of an arrest made without probable cause.

3. Two incriminating statements made by defendant while in custody were properly admitted into evidence. The statements were volunteered by the defendant in response to questions asked by police which, in turn, had been prompted by comments made by the defendant. The questions did not constitute "interrogation", and were not questions which the officers should have known would be reasonably likely to elicit an incriminating response.

4. The trial court properly excluded the testimony of a

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 21A Am Jur 2d, Criminal Law §§ 788, 791 *et seq.*

What constitutes "custodial interrogation" within rule of Miranda v Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.

Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.

[4] 23 Am Jur 2d, Depositions and Discovery § 317.5.

81 Am Jur 2d, Witnesses § 74.

[5] 5 Am Jur 2d, Appeal and Error §§ 623, 891.

[6] 75 Am Jur 2d, Trial §§ 738 *et seq.*, 919.

[7] 21 Am Jur 2d, Criminal Law § 81.

[8] 21 Am Jur 2d, Criminal Law § 83.

41 Am Jur 2d, Incompetent Persons § 33.

witness regarding defendant's sanity. The name of the witness was not included in the defendant's notice of intent to rely on an insanity defense. The statute governing the notice of intent requires that the names of such witnesses be given to the prosecution, and implicit in the statute is the requirement that such names be given to the prosecution even where the witnesses are not known at the time the notice of intent is filed.

5. The trial court's preliminary jury instruction on insanity was ambiguous and confusing, but defendant did not object to the instruction at trial. Further, the court's instructions given at the end of trial were correct and clarified any ambiguity. No manifest injustice resulted from the insanity instructions.

6. The statute which allows a finding of guilty but mentally ill is not unconstitutional.

7. The defendant was not deprived of due process of law by reason of a jury instruction concerning the disposition of a defendant who is found not guilty by reason of insanity.

Affirmed.

1. CRIMINAL LAW — QUESTIONING OF DEFENDANT — WAIVER OF RIGHTS.

It is proper for a police officer to question a defendant in order to clarify the defendant's response to the inquiry of whether he wants counsel where that response is equivocal; so long as a review of the whole event discloses that the interviewing officer has not impinged on the exercise of the defendant's continuing option to cut off the interview, a finding of a voluntary, knowing, and intelligent waiver of rights is not improper.

2. CRIMINAL LAW — INTERROGATION.

Interrogation of a defendant refers not only to express questioning, but also to any words or actions on the part of the police, other than those normally attendant to arrest and custody, that the police should know are reasonably likely to elicit an incriminating response from the defendant.

3. CRIMINAL LAW — STATEMENTS OF DEFENDANT — VOLUNTEERED STATEMENTS.

Statements volunteered by a defendant need not be suppressed even though the statements were not preceded by *Miranda* warnings; a police officer's question prompted by a defendant's volunteered remark does not constitute interrogation where the question was not one which the officer should have known was likely to elicit an incriminating response.

4. Criminal Law — Insanity — Witnesses — Notice.

A requirement that notice be given to the prosecutor of the names of witnesses to be called on behalf of a defendant to establish an insanity defense even where those witnesses are not discovered until after the defendant has filed the written notice of intent to raise the defense of insanity is implicit in the statute governing such notice; and interpretation which implies such a requirement is necessary to give effect to the legislative intent of the statute (MCL 768.21; MSA 28.1044).

5. Appeal — Jury Instructions.

Appellate review of a jury instruction is precluded absent a showing of manifest injustice where the instruction was not objected to at trial.

6. Criminal Law — Insanity — Jury Instructions.

No manifest injustice is shown where a trial court's preliminary instructions to the jury on insanity were ambiguous and confusing but where the instructions given at the end of the trial were correct and clarified any ambiguity that might have been introduced in the preliminary instructions.

7. Criminal Law — Guilty but Mentally Ill.

The statute which allows a finding of guilty but mentally ill is not unconstitutional (MCL 768.36; MSA 28.1059).

8. Criminal Law — Jury Instructions — Disposition of Defendant.

A trial court's jury instruction concerning the disposition of a defendant if he is found not guilty by reason of insanity does not result in a denial of the defendant's right to due process of law.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Earl H. Morgan, Jr.,* Prosecuting Attorney, and *Nick O. Holowka,* Chief Assistant Prosecuting Attorney, for the people.

*Taylor, Carter, Butterfield, Riseman, Clark & Howell, P.C.* (by *David J. Churchill),* for defendant on appeal.

Before: ALLEN, P.J., and CYNAR and C. J. FALAHEE,* JJ.

PER CURIAM. Defendant appeals as of right his conviction for first-degree murder, MCL 750.316; MSA 28.548, upon a jury's verdict of guilty but mentally ill. He was sentenced to life imprisonment.

The instant action arises out of the February 24, 1979, shooting death of defendant's father. On appeal defendant raises numerous issues, only some of which merit discussion and none of which merit reversal.

I

The first issue raised by defendant involves whether the trial court erred in refusing to suppress incriminating statements made by defendant to the police while defendant was in custody.

Prior to trial a hearing was held to determine whether defendant's confession should be suppressed on the grounds that it was involuntary and made in contravention of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

At that hearing it was established that Detective Gary Parks brought defendant into his office at the Lapeer County jail at about 1:10 a.m. on February 25, 1979. Detective Parks informed defendant that defendant's father was dead and that defendant was a suspect. Defendant also was handed a form labeled "Miranda warning". Detective Parks read defendant each of the *Miranda* warnings listed on the form and had defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

give a verbal answer and write out an answer on the form. Question #2 on the "waiver" portion of the form read, "Do you want to talk to a lawyer before any questions?" Next to this question defendant wrote "yesan no". Detective Parks asked defendant to clarify his answer to this question— did he or did he not want a lawyer. In response, according to Detective Parks, defendant crossed out the word "yesan".

For his part, defendant testified that he wrote "yesan no" on the form because he was willing to talk about some questions and unwilling to talk about others without having a lawyer present. According to defendant, Detective Parks told him it would be better if he talked before seeing a lawyer. Defendant also asserted that it was Detective Parks who crossed out the word "yesan" on the form.

After completing the "Miranda warning" form defendant made an exculpatory statement. He was placed in a cell and spoken to again at 9:50 a.m. on February 25, 1979. At about 11:30 a.m., defendant was given a polygraph examination and again given the *Miranda* warnings. At approximately 2:00 p.m. defendant made a confession. Detective Parks, apparently, did not give defendant *Miranda* warnings before taking this written statement, but the waiver was incorporated into the written statement, acknowledged as read and signed by defendant.

The trial court refused to suppress defendant's confession on the basis that when defendant wrote "yesan no" it was not an answer or, at best, was an ambiguous answer requiring clarification. The trial court held that Detective Parks acted prop-

erly in instructing defendant to answer the question whether he wanted a lawyer and found that Detective Parks had made no inducement or threats to defendant. The court found a knowing and voluntary waiver by defendant.

On appeal, defendant argues that he did not make a voluntary waiver of his right to counsel and that all questioning by police should have ceased, until an attorney was present, after defendant answered "yesan no" to the question of whether he wanted to speak to an attorney.

In support of his position defendant cites *People ex rel Wayne Prosecutor v Recorder's Court Judge,* 79 Mich App 495; 261 NW2d 63 (1977), *cert den* 436 US 958 (1978), *People v Brannan,* 64 Mich App 374; 236 NW2d 80 (1975), *rev'd* 406 Mich 104; 276 NW2d 14 (1979), *People v Lewis,* 47 Mich App 450; 209 NW2d 450 (1973), and *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981).

Our review of the cited cases indicates that they are all distinguishable from the instant case in that in the cited cases the defendants either specifically requested counsel, and counsel was not made available, or the defendants sufficiently expressed a desire for counsel by asking questions concerning either the availability of counsel or the advisability of procuring counsel.

The critical distinction between the instant case and those relied on by defendant is that in the instant case defendant gave an ambiguous response to the question of whether he wanted counsel and, without attempting to coerce defendant into a waiver, the questioning officer attempted to clarify defendant's response. This was the proper

procedure to follow. In this regard we find the following analysis by the Court in *Nash v Estelle,* 597 F2d 513, 517-518 (CA 5, 1979), persuasive:

"When, as in the case at bar, a desire for immediate talk clearly appears from the suspect's words and conduct, but he also states he wants a lawyer *(i.e.,* 'I would like to have a lawyer, but I would rather talk to you'), it is sound and fully constitutional police practice to clarify the course the suspect elects to choose. The precedent of *Priest [United States v Priest,* 409 F2d 491 (CA 5, 1969)] does not bar this clarification.

"This is not to say that an interrogating officer may utilize the guise of clarification as a subterfuge for coercion or intimidation. As the Supreme Court reiterated in *Brewer v Williams,* 430 US 387, 404; 97 S Ct 1232, 1242; 51 L Ed 2d 424 (1977), in examining an alleged waiver of the right to counsel 'courts indulge in every reasonable presumption against waiver.' *Miranda* stated that a suspect may waive effectuation of his rights but only if 'the waiver is made voluntarily, knowingly and intelligently.' 384 US 444; 86 S Ct 1612. The critical factor is whether a review of the whole event discloses that the interviewing agent has impinged on the exercise of the suspect's continuing option to cut off the interview."

Based on the foregoing, we find that the trial court did not err in finding a voluntary, knowing and intelligent waiver of defendant's *Miranda* rights. See, also, *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974).

## II

Defendant next argues that his confession should have been suppressed in that it was obtained as a result of an arrest made without probable cause. Our review of the record indicates that this argument is without merit. See *People v*

*Summers,* 407 Mich 432; 286 NW2d 226 (1979), *rev'd on other grounds,* 452 US 692; 101 S Ct 2587; 69 L Ed 2d 340 (1981). See, also, *People v Kyser,* 106 Mich App 216; 307 NW2d 447 (1981).

III

Defendant also argues that the trial court erred in not suppressing two incriminating statements made by defendant in response to police questioning outside the presence of defendant's lawyer.

The first statement the trial court refused to suppress was made at approximately 9:00 a.m. on February 26, 1979. Deputy Clark Arnold took defendant to the booking room to take a set of defendant's fingerprints. Deputy Arnold informed defendant why he had been brought to the booking room. Defendant stated, "It was like a bad dream." Deputy Arnold responded, "What's like a bad dream?" Defendant replied, "To shoot a man six times and see him still try to get up." Deputy Arnold asked no further questions.

The second statement the trial court refused to suppress was one made to Deputy Arthur White, Jr., while he was driving defendant from district court to jail. Defendant said something while Deputy White was not paying attention. Deputy White replied, "What did you say?" To this defendant replied, "How would you feel if you were in my situation?" Deputy White responded, "I'd probably feel pretty depressed." At this point defendant stated that he "didn't mean to reload the gun but he was afraid his Dad was going to get him".

The trial court refused to suppress defendant's

statements on the basis that they were purely voluntary and unsolicited.

Relying, primarily, on *Rhode Island v Innis,* 446 US 291; 100 S Ct 1682; 64 L Ed 2d 297 (1980), defendant argues that his statements to Deputy Arnold and Deputy White should have been suppressed because they were made in response to questioning by police which was reasonably likely to elicit an incriminating response. We disagree.

In *Miranda* the Supreme Court held that the prosecution may not use statements stemming from a custodial "interrogation" without demonstrating the use of procedural safeguards to secure the privilege against self-incrimination. In *Innis,* the Supreme Court defined the term "interrogation" as used in *Miranda:*

"We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. *But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police*

*officers that they should have known were reasonably likely to elicit an incriminating response." Innis, supra,* 300-302. (Emphasis added; footnotes deleted.)

Thus, statements that are volunteered by a defendant need not be suppressed even though the volunteered remarks were not preceded by *Miranda* warnings. *Miranda, supra,* 478. See, also, *People v O'Brien,* 113 Mich App 183; 317 NW2d 570 (1982). Furthermore, a police officer's question, prompted by defendant's volunteered remark, falls under the same exception. *O'Brien, supra, People v Leffew,* 58 Mich App 533; 228 NW2d 449 (1975).

Applying the foregoing authority to the instant case we find that Deputy Arnold's question, "What was like a bad dream?" did not constitute "interrogation" as that term is used in *Miranda* and *Innis.* Although defendant's incriminating statement was preceded by a question from a police officer, that question was asked in response to a volunteered statement by defendant and, more importantly, was not a question which the police officer should have known was reasonably likely to elicit an incriminating statement. Stated another way, we find that a responsive statement by a police officer, even though in question form, is not "express questioning or its functional equivalent" under *Innis* when it is made in response to a question volunteered by defendant and the police officer's question is not one which the officer should have known was likely to elicit an incriminating response.

Similarly, we find that Deputy White's statement that he would feel depressed if he were in defendant's situation was made in response to a statement volunteered by defendant and was not the "functional equivalent" of express questioning which the police officer should have known was

reasonably likely to elicit an incriminating statement. *Innis, supra.*

The trial court did not err in refusing to suppress either of defendant's incriminating statements.

## IV

Defendant also argues that the trial judge erred by excluding the testimony of a lay witness on insanity.

At trial, the prosecutor moved to exclude the testimony of a lay witness who was to testify on the subject of defendant's sanity, because the prosecutor had not been informed, prior to trial, that this witness would be called. Defense counsel admitted that the proposed witness's name was not listed on the notice of intent to assert the defense of insanity. However, counsel asserted that he was not required to notify the prosecutor of this witness because he was not award of the witness at the time he filed the notice of intent to claim insanity. Defense counsel conceded that he knew of the lay witness 13 days before trial.

The trial court ruled that the proposed witness would not be allowed to testify. In doing so, the trial court relied on MCL 768.21; MSA 28.1044, which states:

"(1) If the defendant fails to file and serve the written notice prescribed in section 20 or 20a, the court shall exclude evidence offered by the defendant for the purpose of establishing an alibi or the insanity of the defendant. If the notice given by the defendant does not state, as particularly as is known to the defendant or the defendant's attorney, the name of a witness to be called in behalf of the defendant to establish a defense

specified in section 20 or 20a, the court shall exclude the testimony of a witness which is offered by the defendant for the purpose of establishing that defense."

We agree with defendant's contention that MCL 768.21 does not specifically require that notice be given to the prosecutor of the names of witnesses to be called on behalf of the defendant to establish his insanity defense where those witnesses are not discovered until after the defendant has filed the written notice of intent to raise the defense of insanity. However, we believe such a requirement is implicit in MCL 768.21 and is necessary to give effect to the legislative intent behind the statute.

The purpose of requiring notice of intent to claim the defense of insanity is to protect the public and avoid unfair surprise to the prosecution at trial. *People v Pate,* 108 Mich App 802, 806-807; 310 NW2d 883 (1981). The purpose of requiring a listing of the potential witnesses is obviously to allow the opposing party an opportunity to question those witnesses and investigate their credibility. To conclude that defense counsel is not required to amend the notice of insanity defense to notify the prosecutor of witnesses whose names are not discovered until after the initial filing of the notice would be to create a loophole sufficient to allow the purposes of the statute to be defeated. Under defendant's proposed interpretation of MCL 768.21, it is conceivable that a defendant could list one witness on the notice of insanity defense and, rather than call that witness at trial, call other witnesses whose names were not known at the time of filing the notice of insanity. Thereby a defendant could unfairly surprise the prosecutor and circumvent the purposes sought to be achieved by MCL 768.21.

In the instant case, we find no error in the trial

court's decision to exclude the testimony of defendant's proposed witness.

V

Defendant also raises a number of errors regarding the adequacy of jury instructions. Only one of defendant's claims merits discussion.

Pursuant to MCL 768.29a(1); MSA 28.1052(1)(1), the trial court defined legal insanity prior to testimony being presented on the issue. In concluding his preliminary instruction the trial judge stated:

"Legal insanity means that the defendant was mentally ill or mentally retarded and that in addition to being mentally ill or mentally retarded, he was unable to act lawfully because of any of the following conditions, if you find that the defendant suffered a mental illness or mental retardation or was legally insane at the time and either lacked the substantial capacity or ability to know what he was doing was wrong, you must further consider whether in that situation and in his condition, the defendant had substantial ability to conform his conduct to the requirements of the law which he is charged with violating."

In our view the trial court's preliminary instruction on insanity is ambiguous and confusing and, arguably, could improperly lead the jury to conclude that either prong of the insanity test may be disproved to defeat defendant's insanity claim. However, defendant did not object to this preliminary instruction. Therefore, appellate review is precluded absent a showing of manifest injustice. See *People v Crawford,* 89 Mich App 30; 279 NW2d 560 (1979), *lv den* 409 Mich 914 (1980).

We find no manifest injustice in the instant case. The instructions on insanity given at the end of the trial were correct and clarified any ambiguity that might have been introduced in the preliminary instruction.

## VI

Defendant raises various constitutional challenges to the guilty but mentally ill statute. MCL 768.36; MSA 28.1059. However, defendant's arguments have been raised before and have been rejected by this Court. *People v Sharif,* 87 Mich App 196, 199; 274 NW2d 17 (1978), *lv den* 408 Mich 922 (1980); *People v Willsie,* 96 Mich App 350, 354; 292 NW2d 145 (1980); *People v Bruce Ramsey,* 89 Mich App 468, 472; 280 NW2d 565 (1979), *lv den* 407 Mich 861 (1979).

## VII

Defendant contends that the trial court's instruction concerning disposition of an accused found not guilty by reason of insanity results in a denial of defendant's right to due process of law. This argument has also been rejected by this Court. *People v Rone (On Second Remand),* 109 Mich App 702, 707-713; 311 NW2d 835 (1981), and *People v Tenbrink,* 93 Mich App 326; 287 NW2d 223 (1979), *lv den* 408 Mich 945 (1980).

Finally, we have carefully reviewed defendant's remaining allegations of error and find that none of them, individually or collectively, requires reversal.

Affirmed.