PEOPLE v FRAZIER

Docket No. 66834. Submitted July 26, 1983, at Detroit.—Decided June
    18, 1984.

Ellis Frazier, Jr., was convicted of armed robbery following a jury
    trial in Recorder's Court of Detroit, Leonard Townsend, J. Prior
    to trial, defendant moved to suppress as evidence an inculpa-
    tory statement made by the defendant to the police during the
    time between his arrest and his arraignment. There was testi-
    mony at the hearing on the motion to suppress to the effect
    that defendant expressed a willingness to talk about the rob-
    bery and, after being advised of his rights, made an oral
    inculpatory statement. The testimony at the hearing further
    showed that, when the police officer asked defendant to put his
    statement in writing, defendant requested that an attorney or
    his sister be present. An attorney who was at the police station
    was brought in. The attorney indicated to defendant that she
    could not represent him and advised him to keep his mouth
    shut until his arraignment, when an attorney would be ap-
    pointed. Defendant then requested that his sister be present.
    When his sister arrived, defendant reduced his statement to
    writing. Defendant argued that all interrogation should have
    stopped when he requested an attorney and asserted that his
    statement was not voluntary because he was suffering from an
    allergic reaction to a penicillin shot which he had received
    when the police took him to the hospital for treatment of his
    injured hand. The trial court denied the motion to suppress,
    holding that there was no interrogation because defendant had
    initiated the conversation with the police which resulted in his
    statement, that because defendant asked for either an attorney
    or his sister the police were not required to terminate the

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 29 Am Jur 2d, Evidence § 590.
[3] 21A Am Jur 2d, Criminal Law § 974.
[4, 5] 21 Am Jur 2d, Criminal Law § 433 *et seq.*
    29 Am Jur 2d, Evidence § 547.
Admissibility of confession or other statement made by defendant
    as affected by delay in arraignment—modern state cases. 28
    ALR4th 1121.

discussion with defendant, and that defendant's statement was not rendered involuntary by reason of the fact that he was suffering from an allergic reaction to his medical treatment. Defendant appeals, asserting that the trial court erred in failing to suppress the use of his statement as evidence at trial. *Held:*

1. The record clearly supports the trial court's finding that defendant initiated the conversation in which he made his inculpatory statement.

2. Since the defendant requested either an attorney or his sister and, *after speaking to counsel, again asked for his sister* and proceeded to reduce his statement to writing when his sister arrived, and since there was neither custodial interrogation nor an attempt by the police to impinge on defendant's right to cut off the interview, the trial court did not err in holding that the police were not required to terminate their discussion with the defendant.

3. The trial court's findings that the defendant had a clear mind at the time of the making of the statement and that defendant was not unduly influenced by his allergic reaction to medication were not clearly erroneous.

4. Since the delay between defendant's arrest and arraignment was occasioned by the need to take defendant to the hospital for medical treatment and was not for the purpose of extracting a statement from defendant, the statement was not rendered inadmissible by reason of the delay in arraignment.

Affirmed.

1. CRIMINAL LAW — STATEMENT OF DEFENDANT — VOLUNTARINESS OF STATEMENT — APPEAL.

The Court of Appeals, in reviewing determinations on the voluntariness of statements given by a defendant to the police, examines the whole record and independently determines whether the statement was voluntarily made; however, the determination of the trial judge will be sustained unless the Court of Appeals is left with the definite and firm belief that a mistake has been made.

2. CRIMINAL LAW — STATEMENT OF DEFENDANT — VOLUNTARINESS OF STATEMENT — APPEAL.

A determination by the trial court that a criminal defendant voluntarily made an inculpatory statement to the police will not be overturned on appeal where the testimony both at a suppression hearing and at trial indicates that defendant voluntarily made the statement and there was no testimony that

the police took the initiative to extract the statement from the defendant.

3. CRIMINAL LAW — STATEMENT OF DEFENDANT — REQUEST FOR COUNSEL — CUSTODIAL INTERROGATION.

A written inculpatory statement by a criminal defendant is not rendered inadmissible on the ground that it was elicited after the defendant had indicated a desire for counsel where the defendant, after being advised of his rights, voluntarily made an oral inculpatory statement and where, upon being asked by the police to reduce the oral statement to writing, the defendant asked to see his sister or an attorney, the defendant was provided with an attorney who advised the defendant to remain silent, the defendant then asked to have his sister present and with his sister present the defendant reduced his prior oral statement to a written statement, since under such circumstances there was no custodial interrogation by the police after the defendant exercised his right to speak to counsel and no overreaching by the police such as would impinge on the defendant's exercise of his continuing right to cut off the interview.

4. ARREST — ARRAIGNMENT — DELAY IN ARRAIGNMENT.

A delay in arraigning a prisoner resulting from the necessity of taking the prisoner to a hospital for treatment of an injury is not unnecessary delay within the meaning of the statute requiring that there be no unnecessary delay between arrest and arraignment (MCL 764.26; MSA 28.885).

5. CRIMINAL LAW — EVIDENCE — CONFESSIONS — DELAY IN ARRAIGNMENT.

A statement by a criminal defendant made between the time of his arrest and arraignment need not be suppressed by reason of the fact that the arraignment was delayed where there is nothing in the record to suggest that any portion of the delay was used as a tool to extract the statement from the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Norman R. Robiner,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and WAHLS and R. LAMB,* JJ.

WAHLS, J. Defendant was found guilty by a jury of armed robbery, MCL 750.529; MSA 28.797. The trial court sentenced defendant to 15 to 30 years imprisonment. Defendant appeals as of right.

Defendant raises several arguments on appeal. The issue we find sufficiently meritorious to warrant discussion concerns whether a statement attributed to defendant was properly admitted into evidence at trial.

The record reveals that defendant was arrested with another person on February 10, 1982, and charged with first-degree murder and armed robbery in connection with the robbery of a clothing store in Detroit the same day. The security guard was shot and killed. A *Walker*[1] hearing was conducted in which defendant challenged the admissibility of a statement which he made to police while in custody.

The testimony at the *Walker* hearing revealed that defendant was taken into custody at approximately 6:00 p.m. on February 10, 1982. On the morning of February 11, 1982, defendant was taken to a hospital for treatment of a hand injury. Defendant returned to the station house that evening. Arraignment was conducted on the morning of February 12, 1982.

During the night of February 11, 1982, defendant initiated a converstaion with an officer of the Detroit Fire Department, who was in the station house to interview a witness in an arson case. The defendant expressed a willingness to talk about

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

the robbery. This information was conveyed to the police officer investigating the robbery. The defendant was taken to an interview room and informed of his constitutional rights. Defendant then gave a statement to the police officer which implicated his involvement in the robbery and the shooting.

The police officer asked the defendant to put the statement in writing. The defendant then requested that an attorney or his sister be present. The police officer brought in an attorney who was at the station house on line-up duty. The attorney did not discuss the facts of the case with defendant. Rather, she informed defendant that she could not represent him and advised defendant to keep his mouth shut until the arraignment, when an attorney would be appointed. Defendant then requested that his sister be present. Defendant's sister arrived at the station house and entered the interview room. Defendant then reduced the statement to written form with the aid of the police officer. Defendant did not request an attorney and no further attempt was made to procure an attorney for defendant.

The testimony at the *Walker* hearing also included defendant's testimony that his actions on that evening were affected by the drug penicillin, which was given to him at the hospital. However, defendant's girl friend testified that penicillin caused only a skin rash. At the conclusion of the testimony, defendant argued that the interrogation had been conducted in derogation of his constitutional rights. Defendant argued that, once he requested that he wanted an attorney present, all interrogation should have ended.

The trial judge rejected this argument. The judge held that there was no interrogation because defendant initiated the conversation with the po-

lice. The trial judge further reasoned that, in light of the circumstances of defendant's request for either an attorney or his sister, the police were not required to terminate their discussion with defendant prior to reducing his statement to writing.

At the trial, the testimony established that two men perpetrated the robbery of the clothing store. During the robbery, the men disarmed the guard and shot him. The cashier of the store identified the person arrested with defendant, Michael Anthony Wicks,[2] as the one who shot the guard. None of the witnesses were able to identify defendant as one of the robbers. The testimony also established that defendant and Wicks were arrested near the store soon after the robbery and the security guard's handgun was found in a nearby snowbank.

The substance of defendant's statement is as follows. Defendant entered the store with Wicks to buy clothing. Once inside, Wicks told him that he intended to rob the store. Defendant agreed and together they disarmed the guard. Wicks took the guard's gun. Defendant took the money from the register and ran out of the store. Once outside, defendant heard two shots fired. As both men ran from the scene, defendant placed the handgun in his pocket because his coat was bigger.

The standard of review for suppression rulings requires this Court to examine the whole record and independently determine whether the defendant voluntarily made the statements admitted at trial. *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972). The ruling of the trial judge will be sustained unless we are left with a definite and

---

[2] Wicks, who was jointly tried with defendant, was convicted of second-degree murder, armed robbery, assault with intent to rob armed and felony firearm. This Court affirmed his conviction in an unpublished opinion. *People v Wicks,* Docket No. 66835, decided November 2, 1983.

firm belief that a mistake has been made. *People v Goss,* 89 Mich 598; 280 NW2d 608 (1979). In the present case, the circumstances surrounding the defendant's confession convince us that defendant voluntarily made the inculpatory statement.

The present case is clearly distinguishable from the authoritive cases on police interrogation. See *Edwards v Arizona,* 451 US 477, 482-484; 101 S Ct 1880; 68 L Ed 2d 378 (1981); *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982). Here, the conversations were initiated by defendant. Neither testimony at the *Walker* hearing nor at trial suggests that the police officer present took the initiative to extract a statement from the defendant. Defendant was advised of his rights and made the inculpatory statement prior to his request for an attorney or his sister. The request for an attorney was made in response to the police officer's desire to have defendant repeat the statement in writing. Defendant rejected the advice of the attorney to whom he spoke and repeated the statement in the presence of his sister.

In *People ex rel Wayne Prosecutor v Recorder's Court Judge,* 79 Mich App 495; 261 NW2d 63 (1977), *lv den* 402 Mich 879 (1978), *cert den* 436 US 958 (1978), this Court held that an expression by a defendant that he wanted an attorney, albeit an ambiguous statement, requires a cessation of police interrogation. See also *People v Plyler,* 86 Mich App 272, 277; 272 NW2d 623 (1978). However, we find the facts of this case distinguishable from those cited above. In *ex rel Wayne Prosecutor* and *Plyler,* after the custodial interrogation began, the defendants "either specifically requested counsel, and counsel was not made available, or the defendants sufficiently expressed a desire for counsel by asking questions concerning

either the availability of counsel or the advisability of procuring counsel". *People v Giuchici,* 118 Mich App 252, 257; 324 NW2d 593 (1982). However, we hold that in the present case, defendant was not subjected to custodial interrogation within the meaning of *Miranda.*

"By custodial interrogation, we mean questioning inititated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

*People v Paintman, supra,* pp 528-529, quoting from *Miranda v Arizona,* 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Therefore, while it is true that "custodial interrogation by police may take different forms", *People v Paintman, supra,* p 529, we do not find any overreaching in the conduct of police in this case. The officer did not "impinge on the exercise of the subject's continuing option to cut off the interview". *People v Giuchici,* 118 Mich App 252, 258; 324 NW2d 593 (1982), quoting from *Nash v Estelle,* 597 F2d 513, 518 (CA 5, 1979).

Likewise, we are not persuaded by the defendant's assertion that he was so unduly influenced by his allergic reaction to penicillin that his statement was not the product of a clear mind. The trial judge heard conflicting testimony of the effect of the drug on defendant. On this question we defer to the factual determination of the trial judge. There is nothing in the record to suggest that his decision was erroneous. *People v Anglin,* 111 Mich App 268; 314 NW2d 581 (1982).

Finally, we reject defendant's argument that the delay in his arraignment was used as a tool to extract a confession. Michigan law requires that police bring a prisoner before a magistrate for

arraignment without unnecessary delay. MCL 764.26; MSA 28.885. The delay in this case cannot be considered unnecessary. Defendant was arrested on the night of February 10, 1982. The following morning he was transferred to the hospital where he remained until the evening of February 11, 1982. The following morning, defendant was arraigned. The record does not suggest that any portion of the intervening time was intended to extract a statement from defendant. Therefore, this argument must fail. *People v Hamilton,* 359 Mich 410; 102 NW2d 738 (1960); *People v Jackson,* 114 Mich App 649; 319 NW2d 613 (1982).

We find the remainder of defendant's arguments meritless.

Affirmed.